**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DONALD BLOWERS

    Petitioner,

v.

    CASE NO. 2:12-CV-11015
    HONORABLE LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

DEBRA SCUTT,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

Donald Blowers, ("Petitioner"), confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; assault with a dangerous weapon, M.C.L.A. 750.82; and being a second felony habitual offender, M.C.L.A. 769.10. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Ingham County Circuit Court. Petitioner was found not guilty of kidnapping.

Petitioner met the victim, Coreen Heathcoat, in the spring of 2006. The two dated for a while before Petitioner and his son moved in with the victim. About two weeks after moving in, Petitioner and the victim got into an argument, during which time Petitioner hit the victim, giving her a black eye. (Tr. 7/31/07, pp. 173-76).

1

About a month after the first attack, Petitioner again assaulted the victim, this time hitting her in the rib cage area and the head. Fearing that her ribs had been broken, the victim went to the hospital. Officer George Kelly interviewed the victim. The victim, claiming that she was afraid of Petitioner, gave two false stories to Officer Kelly concerning the assault. The victim first told Officer Kelly that she had fallen. When Officer Kelly expressed disbelief in this account, the victim gave him a false name of her assailant. (*Id*. at pp. 176-79).

Upon returning home, Petitioner confronted the victim about having gone to the hospital, accusing the victim of trying to "set him up." The victim attempted to close the bedroom door, but Petitioner prevented her from doing so. Petitioner eventually pulled the bedroom door off the hinges, jumped on top of the victim, and started beating her, knocking the breath out of her. After the assault stopped, the victim called her friend Jessica Underwood to pick her up. Underwood came to pick up the victim, but also notified the police. As soon as the victim finished dressing, Petitioner informed her that the police were there for her. Underwood arrived a short time later and took the victim to spend the night at her house. The victim went the next day to a shelter for abused women and children. The victim reported the assault to the police two days later. After receiving numerous voice mails from Petitioner and his son, the victim ultimately returned to live with Petitioner. (*Id*. at pp. 179-84).

The victim was back home with Petitioner for only a few minutes before Petitioner began abusing her again. Petitioner threw the victim on the bed and accused her of "trying to set me up by going to that safe house. You shouldn't involve outside people in our relationship. Now I'm going to be in trouble[.]" When the victim attempted to escape from the house, Petitioner tore her clothes off and began to hit her. When the victim attempted to escape, Petitioner picked her up and

2

carried her back into the bedroom. Petitioner began to cry and apologize. (*Id.* at p. 185).

Later that month, on October 29, 2006, the victim and Petitioner were married. Around the same time, the victim asked Ingham County Prosecuting Attorney Stuart Dunnings to drop pending criminal charges against Petitioner. (*Id*. at pp. 186-87).

A short time later, the victim obtained a court order for Petitioner to stay away from her. In spite of this order, the two were together on November 14, 2006. Petitioner again became angry at the victim and began hitting her. The victim called the police and was taken to the hospital for her injuries. (*Id*. at 189-90).

Upon leaving the hospital, the victim returned home, under the belief that Petitioner would not be there. Fearing that Petitioner would return, the victim called her friend Jim Resseguie to come pick her up. The victim began packing. Soon after Resseguie's arrival, Petitioner came home. Petitioner asked Resseguie who he was and started to approach him. Resseguie told Petitioner to back up and sprayed him with starter fluid. Petitioner grabbed the victim by the arm and dragged her, shoeless and coatless, out of the house. Resseguie attempted to call the police, but he was not able to get through to them until after Petitioner had left with the victim. (*Id.,* pp. 190-97, 342-43, 345-46, 348).

Petitioner walked the victim down the street to his truck and ordered her to get in. The victim, out of fear, complied. Petitioner began driving and verbally abused her. Petitioner began hitting the victim on the side of the head repeatedly. Petitioner told the victim he had a hotel room, and that, "if he was going to prison, he was going to make it worth it." (*Id*. at pp. 197-201).

Petitioner and the victim arrived at the motel room that Petitioner had rented. The victim had a drink with Petitioner to keep him happy. The victim asked Petitioner if she could go home,

but he said, "[N]o. If I can't have you, nobody is going to have you. You're not going anywhere. You promised never to leave me." Petitioner then removed the victim's clothes and his clothes. Although the victim repeatedly tried to get dressed to leave, Petitioner would not let her. Petitioner began hitting the victim in the face, although he became tearful and apologetic when he saw the victim bleeding. However, when the victim again tried to get dressed to leave, Petitioner sexually assaulted her. Petitioner subsequently prevented the victim from leaving. When Petitioner went to use the bathroom, the victim grabbed a nearby t-shirt, put it on, and ran out into the motel parking lot with no other clothes on and began screaming that Petitioner had hurt her and was attempting to kill her. The victim testified that no one heard her screams. Petitioner exited the motel room naked, grabbed the victim, and carried her back in. Petitioner ordered the victim to put some clothes on, but did not let her get completely dressed. Petitioner told the victim, "You fucked this place up. Somebody probably heard you. They're going to call the cops. Get your ass in the truck." (*Id.* pp. 202-06).

After the two got into the truck, Petitioner drove away from the motel and then turned down a dirt road. Petitioner drove some distance down the dirt road before stopping the truck. Petitioner told the victim that "[T]his is a good spot. I'm going to snap your fucking [neck] and [throw] you out in the woods. . . . [I]t'll take weeks and months and years. They may never find you here." The victim begged for her life and, after a few minutes, Petitioner began driving again, saying, "[Y]ou're lucky this time." Petitioner subsequently threatened to drive the truck into a telephone pole and kill them both. The victim considered jumping out of the vehicle to escape, but did not. (*Id.* pp. 206-07).

Petitioner returned to their home to get some clothes, parking down the street from the house because he was afraid it was being watched by the police. The victim managed to put on some shoes

and get her purse. Petitioner then drove the victim to another hotel and rented another room. Petitioner threatened to kill the victim if she attempted to flee while he was renting the room. Petitioner forced the victim up to the room, where he immediately ripped the room phone out of the wall and tore it apart. Petitioner also turned off his cell phone, saying that he was worried he was being tracked by it. Petitioner began drinking again, before beating and sexually assaulting the victim. Petitioner continued to abuse the victim "off and on" throughout the night and the entire following day. At one point, Petitioner grabbed the victim's mouth and tried to rip her face apart. At another point, Petitioner got on top of the victim and began hitting her, before attempting to choke her first with his hands and then with his belt. During one of Petitioner's crying spells, the victim persuaded him to go to the truck and get her denture adhesive because he had damaged her dental plate. As soon as Petitioner left, the victim reassembled the room phone and called the police. (*Id.,* at pp. 209, 213-221, 226-27).

Petitioner's convictions were affirmed on appeal, although the case was remanded to the trial court for correction of the pre-sentence investigation report. *People v. Blowers,* No. 281188 (Mich.Ct.App. March 12, 2009); *lv. den.* 485 Mich. 1008, 775 N.W.2d 755 (2009).

Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Blowers,* No. 06-1354-FC (Ingham County Circuit Court, June 14, 2010). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Blowers*, No. 300017 (Mich.Ct.App. November 15, 2010); *lv. den.* 490 Mich. 858, 802 N.W.2d 344 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Ineffective assistance of counsel.

II. Great weight of the evidence.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(internal quotations omitted). "[A] state

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### III. Discussion

#### A. Claim # 1. Ineffective assistance of counsel claims.

Petitioner claims he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See*

*Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Petitioner first claims that his trial counsel was ineffective for failing to object to several witnesses committing perjury.

Petitioner alleges that the prosecutor presented false testimony from the victim that she had bailed Petitioner out of jail on November 14, 2006. The Michigan Court of Appeals rejected Petitioner's claim, on the ground that the victim never testified that she bailed Petitioner out of jail, but that a police officer had. The Michigan Court of Appeals further noted that the prosecutor

8

admitted in his closing argument that the victim had not bailed Petitioner out of jail. Because the victim did not commit perjury, counsel was not ineffective for failing to object. *Blowers,* Slip. Op. at * 3-4.

Petitioner further claims that his trial counsel was ineffective for failing to object to false evidence in the form of a medical report from October 8, 2006, indicating that Petitioner had caused the victim to be hospitalized for cracked ribs. The treating physician, however, testified at Petitioner's trial that the victim had not received any broken or cracked ribs.

Petitioner finally argues that Detective Traci Ruiz committed perjury when she testified that, when Petitioner rented the motel room on the night in question, he gave his address as 521 or 321 North Catherine Street, Lansing, Michigan 48907, but then stated that there was no such address. Petitioner claims that this testimony was false because there is an address for 521 North Catherine Street in the Lansing area although it is not in the City of Lansing. Petitioner failed to show, however, that Detective Ruiz was not merely mistaken when she testified that there was no address for 521 North Catherine Street.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness'

9

statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith*, 197 F. Supp. 2d at762). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has failed to show that any of the witnesses committed perjury at his trial. The victim herself did not testify that she bailed Petitioner out of jail and the prosecutor acknowledged in his closing argument that Petitioner had not been bailed out at trial. The treating physician testified that the victim did not receive any cracked or bruised ribs from Petitioner. Finally, Petitioner has failed to show that Detective Ruiz was not merely mistaken when she testified that there was no address for 521 North Catherine Street.

Petitioner has failed to show that any of the witnesses committed perjury. Petitioner's counsel, thus, was not ineffective for failing to challenge any of this testimony on the ground that it was perjured. *See Brown v. Burt*, 65 Fed. Appx. 939, 942 (6th Cir. 2003).

Petitioner next claims that his counsel was ineffective for failing to object to the admission of hearsay evidence. Petitioner cites to several pages in the transcript but does not identify how any of this evidence was hearsay. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d

759, 771 (6th Cir. 1998). Respondent has referred to the page citations in her answer (Respondent's Answer, pp. 38-39) and noted that most of the complained of testimony was not inadmissible hearsay because it either involved Petitioner's own statements, which are admissible under M.R.E. 801(d)(2), were admissible under the excited utterance or medical records exceptions to the hearsay rule, M.R.E. 803(2), M.R.E. 803(4), or were not admitted to prove the truth of the matter asserted. Respondent also points out that several times, counsel did, in fact, object to the admission of certain testimony on hearsay grounds.

Petitioner's trial counsel was not ineffective in failing to object to any out-of-court statements made by Petitioner because they were admissible under M.R.E. 801(d)(2) as an admission of a party-opponent. *See Robins v. Fortner,* 698 F.3d 317, 335 (6th Cir. 2012). Most of the victim's other out-of-court statements were admissible pursuant to the excited utterance or the medical treatment exceptions to the hearsay rule. As such, Petitioner's trial counsel was not ineffective for failing to object to their admission. *See Brandt v. Curtis*, 138 Fed. Appx. 734, 739-41 (6th Cir. 2005). Some of the other complained of statements were not admitted to prove the truth of the matter asserted. Because these out of court statements were admitted for a non-hearsay purpose, trial counsel was not ineffective for failing to object to their admission. *See Flood v. Phillips,* 90 Fed. Appx. 108, 119 (6th Cir. 2004). Counsel was thus not ineffective in failing to object to this evidence.

Petitioner next contends that counsel was ineffective for failing to object to the admission of prior bad acts evidence. Trial counsel, however, filed a motion before trial to exclude this evidence. Moreover, contrary to Petitioner's allegation, counsel did not agree before trial to the admission of this evidence. (Tr. 7/30/07, pp. 9-12). Because counsel did, in fact, object to the

11

admission of this prior bad acts evidence, this portion of Petitioner's ineffective assistance of counsel claim is without merit. *See e.g. Durr v. Mitchell,* 487 F. 3d 423, 440 (6th Cir. 2007).

Petitioner next contends that counsel was ineffective for failing to call several witnesses who would have testified that the victim lied about the extent of her injuries and what she and Petitioner did together during the time period that she claims to have been assaulted. The Michigan Court of Appeals rejected this claim:

> Here, there is no indication that defense counsel's failure to call witnesses deprived defendant of a substantial defense. Defendant argues that if his witnesses had been called, they would have testified that the victim lied about the extent of her injuries and what they had done together during the time when she alleges the assaults. Even if the witnesses could have testified as defendant claims, there is no indication that their testimony would have resulted in an acquittal. At trial the prosecutor elicited testimony from the victim that she had been less than truthful about the nature of previous assaults. Additionally, defense counsel cross-examined the victim about her various motives to lie about being assaulted and whether she was lying about whether defendant had ever assaulted her. He also attacked the victim's lack of memory and highlighted her alcoholism. Thus, defendant was not deprived of a substantial defense.

*Blowers,* Slip. Op. at * 4.

Petitioner is not entitled to habeas relief for two reasons. First, none of these witnesses were actually present when any of the alleged assaults took place. A defendant is not denied the effective assistance of counsel by an attorney's failure to present the testimony of a witness who was not present at the scene of a crime. *See Morgan v. Bunnell*, 24 F. 3d 49, 53 (9th Cir. 1994). Because none of these witnesses were present when the confrontations took place between Petitioner and the victim, they could not have exonerated Petitioner of the crimes. Petitioner's counsel, therefore, was not ineffective in failing to call them as witnesses. *See e.g. Pillette v. Berghuis,* 408 Fed. Appx. 873, 885-86 (6th Cir. 2010).

Second, Petitioner was not prejudiced by his counsel's failure to call these witnesses

12

because their testimony was cumulative of other evidence and other witnesses presented at trial in support of Petitioner's claim that the victim had lied about the nature of her injuries and what she and Petitioner had done together on the night in question. *Wong,* 558 U.S. at 22-23; *See also United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). In this case, the jury had significant evidence presented to it that the victim had been less than truthful about the nature of the prior assaults, her motives for fabricating assault charges against Petitioner, whether she had lied about Petitioner's prior assaults, her lack of memory, and her alcohol problem. Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that the victim fabricated these charges, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Lastly, Petitioner claims that trial counsel was ineffective for failing to hire a private investigator until six months after the assaults had taken place. Petitioner, however, has failed to show that counsel would have obtained beneficial information had he hired an investigator earlier. As such, he has failed to establish that he was prejudiced by his counsel's failure to hire an investigator sooner. *See Welsh v. Lafler*, 444 Fed. Appx. 844, 851 (6th Cir. 2011)(defense counsel's failure to hire private investigator did not prejudice defendant, and thus was not ineffective assistance; defendant failed to present sufficiently detailed and convincing account of what additional facts investigator could have discovered in support of defendant's innocence). Petitioner thus is not entitled to habeas relief on his first claim.

**B. Claim # 2. The great weight of the evidence claim.**

Petitioner next contends that the verdict went against the great weight of the evidence, because there was no evidence that Petitioner intended to do great bodily harm or that he had used a dangerous weapon.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *See Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Artis v. Collins,* 14 Fed. Appx. 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict a petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

To the extent that Petitioner challenges the sufficiency of the evidence to convict him, he is not entitled to habeas relief. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable

14

doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. *Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing *People v. Mitchell,* 149 Mich. App. 36, 38; 385 N.W. 2d 717 (1986)). The term "intent to do great bodily harm less than murder" has been defined as an intent to do serious injury of an aggravated nature. *Mitchell,* 149 Mich. App. at 39.

Under Michigan law, the elements of assault with a dangerous weapon are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *See Gardner v. Kapture,,* 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003)(citing *People v. Lawton,* 196 Mich.App. 341, 349, 492 N.W.2d 810 (1992)).

In the present case, there was sufficient evidence for a rational trier of fact to convict Petitioner of both assault charges. As the Michigan Court of Appeals noted in rejecting Petitioner's claim, *See Blowers,* Slip. Op. at 2, the victim testified that Petitioner "repeatedly beat her over the course of a 24-hour period." During one of these assaults, the victim testified that Petitioner "stretched her face so much that she thought he was going to rip it off." The victim also testified that Petitioner tried to pull off the partial plate that was attached to her teeth. The victim testified that Petitioner wrapped a belt around her neck and pulled it so hard "that she thought her head would explode." The victim testified that Petitioner threatened to kill her several times. Finally, the emergency room physician who treated the victim testified that her injuries were caused by blunt force trauma. This evidence, if believed, was sufficient for a rational trier of fact to conclude that Petitioner intended to do great bodily harm when he assaulted the victim. In addition, the victim's testimony that Petitioner assaulted her with a belt was sufficient to establish that a dangerous weapon had been used by Petitioner, so as to support Petitioner's conviction for assault with a dangerous weapon.

To the extent that Petitioner challenges the credibility of the victim or other prosecution witnesses, he would not be entitled to relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is

generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Any insufficiency of evidence claim that rests on an allegation of the witnesses' credibility, which is the province of the finder of fact, does not entitle a habeas petitioner to relief. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his second claim.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn v. Booker*, 718 F. Supp. 2d 846, 854 (E.D. Mich. 2010). The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Myers*

*v. Straub*, 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

## V.  ORDER

Accordingly, the Petition for Writ of Habeas Corpus is DENIED.

The Court further DENIES a certificate of appealability.

The Court further DENIES Petitioner leave to appeal *in forma pauperis*.

                                         S/Lawrence P. Zatkoff
                                         HON. LAWRENCE P. ZATKOFF
Dated: February 3, 2014          UNITED STATES DISTRICT JUDGE